Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAITH PONCE, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff*,<br><br>v.<br><br>HISMILE PTY LTD.,<br><br>     *Defendant*. | Case No. 2:24-cv-01496<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# Table of Contents

I.      Introduction. ........................................................................................1

II.     Parties. .................................................................................................4

III.    Jurisdiction and Venue. .......................................................................5

IV.     Facts. ...................................................................................................5

     A.      Defendant's fake prices and fake discounts. ..............................5

     B.      Defendant's advertisements are unfair, deceptive, and unlawful...................13

     C.      Defendant's advertisements harm consumers. ...........................14

     D.      Plaintiff was misled by Defendant's misrepresentations.................15

     E.      Defendant breached its contract. ..............................................18

     F.      No adequate remedy at law. ......................................................18

V.      Class action allegations. ....................................................................19

VI.     Claims. ...............................................................................................21

     First Cause of Action: Violation of California's False Advertising Law Bus.
         & Prof. Code §§ 17500 & 17501 et. seq.........................................21

     Second Cause of Action: Violation of California's Consumer Legal Remedies
         Act...................................................................................................22

     Third Cause of Action: Violation of California's Unfair Competition Law ............25

     Fourth Cause of Action: Breach of Contract .....................................27

     Fifth Cause of Action: Breach of Express Warranty ..........................28

     Sixth Cause of Action: Quasi-Contract/Unjust Enrichment ...............29

     Seventh Cause of Action: Negligent Misrepresentation.....................29

     Eighth Cause of Action: Intentional Misrepresentation......................30

VII.    Relief. .................................................................................................31

VIII.   Demand for Jury Trial. .......................................................................31

## I.      Introduction.

1.      Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.      While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.      Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.      Moreover, Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.  So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5.      In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

6.      Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

7.     So, as numerous courts have found, fake sales violate these laws.  They also violate California's general prohibition on unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

8.     Defendant HiSmile Pty Ltd. ("Defendant" or "Hismile") sells and markets oral care products online through the Hismile brand and website, us.hismileteeth.com.

9.     On its website, Defendant lists purported regular prices for its products, and also advertises purported limited-time discounts from those purported regular prices. These include "LAST CHANCE" discounts that are purportedly limited in time.  These discounts are made available by using a discount code, such as "SMILE" or are automatically applied to the all products sitewide.  Defendant uses countdown clocks to represent that their sales are on the verge of ending.  Defendant also advertises that its products have a lower discount price as compared to a higher, regular price shown in grey and/or strikethrough font.  Examples are shown below:







10.     But the truth is, Defendant's sales are not limited in time.  The "regular" prices Defendant advertises are not actually Defendant's "regular" prices, and the products are routinely on sale.  The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.  Nor are the purported discounts limited-time offers or "LAST CHANCE."  Instead, the sales persist.

11.     As described in greater detail below, Ms. Ponce bought products from Defendant from its website, us.hismileteeth.com.  When Ms. Ponce made her purchase, Defendant advertised that a 50% off sale was going on, and so Defendant represented that the products that Ms. Ponce purchased were being offered at a 50% off discount from its purported "regular" price that Defendant advertised.  And based on Defendant's representations, Ms. Ponce believed that she was purchasing products whose regular price and market value was the purported "regular" price that Defendant advertised, that she was receiving a substantial discount, and that the opportunity to get that discount was time-limited.  These reasonable beliefs are what caused Ms. Ponce to buy from Defendant when she did.

12.     In truth, however, the representations Ms. Ponce relied on were not true.  The purported "regular" prices were not the true regular prices, the purported "discounts" were not the true discounts, and the discounts were ongoing—not time-limited.  Had Defendant been truthful, Ms. Ponce and other consumers like her would not have purchased the Products, or would have paid less for them.

13.     Plaintiff brings this case for herself and the other customers who purchased Hismile Products.

## II.   Parties

14.     Plaintiff Faith Ponce is domiciled in Valencia, California.

15.     The proposed class includes citizens of every state.

16.     Defendant HiSmile Pty Ltd. is an Australian proprietary limited company with its principal place of business at 2563 Gold Coast Hwy Shop 1, Queensland, 4218, Australia.

### III. Jurisdiction and Venue.

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

18.     The Court has personal jurisdiction over Defendant because Defendant sold Hismile Products to consumers in California, including to Plaintiff.

19.     Venue is proper under 28 U.S.C. § 1391(c)(3).  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

### IV. Facts.

#### A. Defendant's fake prices and fake discounts.

20.     Defendant HiSmile Pty Ltd. manufactures, distributes, markets, and sells oral care products directly to consumers through its website, us.hismileteeth.com. Hismile sells oral care products ("HiSmile Products" or "Products").  The Products are often sold as part of multi-product bundles, which are purchased as a single package ("Hismile Bundles" or "Bundles").

21.     On its website, Defendant creates the false impression that its Products have higher regular prices than they truly have.

22.     In addition, Defendant also creates the false impression that its Bundles' were previously priced at higher "regular" prices than they truly were.

23.     On its website, Defendant advertises steep discounts on its Products.  These discounts offer "X%" off the "regular" prices Defendant advertises.  Even though in truth these discounts are not limited in time, Defendant prominently claims they are "LAST CHANCE" or time-limited.  And it advertises these discounts extensively: on an attention-grabbing banner; in a large banner image on their homepage; on the products listing pages, next to images; on the individual product pages.  Example screenshots are provided on the following pages:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Captured on August 15, 2023*

*Captured on November 14, 2022*



*Captured on July 24, 2022*

24.    Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely.  For example, as depicted below, Defendant represents that its sales expire on a particular date or when the countdown clock expires, for example: "Sale ends in 2h 11m 15s."  To reasonable consumers, this means that after the countdown clock expires, Defendant's Products will no longer be on sale and will retail at their purported regular price.  But immediately after a purportedly time-limited sale ends, Defendant generates another similar discount, with a new expiration date. In fact, site-wide sales are pervasive on the HiSmile website.

25.    For example, on November 29, 2023, Defendant advertised a purportedly time-limited Black Friday sale that was ending in "2h 11m 15s."



*Captured on November 29, 2023*

26.    However, on November 29, 2023, a few hours after the time-limited sale was supposed to have ended, Defendant advertised the same sale with a new expiration time.



*Captured on November 29, 2023*

27.     In addition, Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of a Products) and fake discounts.

28.     For example, on November 28, 2023, Defendant advertised a purported discount of "50% off" and claimed consumers can "today only, save a massive 50% off." On this day, Defendant offered its Everyday Whitening Bundle, which has a purported regular price of $36:



*Captured November 28, 2023*

29.     But the truth is, the Everyday Whitening Bundle listed regular price of $36 is not its prevailing price.  Instead, it is always found at a substantial discount from the purported regular price:



*Captured February 12, 2023*



*Captured December 19, 2023*



*Captured January 9, 2024*

30.     As shown above, the same Everyday Whitening  is always on sale for "X% off" with a purported regular price of $36, and the customer is not receiving the advertised discount by buying during the purported sale.

31.     The advertised discount is prominently displayed in a bold banner at the top of Defendant's website, including on the homepage, product pages, search pages, and the checkout pages.  It appears in a bold and colorful font next to the "Add to cart" button on the product page of every Hismile Bundle.

32.     To confirm that Defendant always offers discounts off of purported regular prices for its Bundles, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[1]  Defendant's sales have persisted continuously since at least March 2022.  For example, over 20 randomly selected screenshots of Defendant's website, us.hismileteeth.com, were collected from the Internet Archive's Wayback Machine, from the 2021-2023 period.  In addition, 10 additional screenshots from the us.hismileteeth.com website were captured from November 2023 to January 2024 by

---

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/

visiting the website and recording screenshots. For all of the randomly selected screenshots of Defendant's website where Bundle pricing was visible, there was a purportedly time-limited discount on the Bundles.

33.     In addition, Defendant repeatedly states that a particular Bundle "was" offered for a higher, strike-through price, when in fact the Bundles are always on sale and never offered for those higher prices.

34.     Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products that they are purchasing only if they purchase during the "limited time" promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Products worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

35.     Based on Defendant's advertisements, reasonable consumers reasonably believe that the "regular" prices Defendant advertises are Defendant's former prices (that is, the price at which the goods were actually offered for sale before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the "regular" prices Defendant advertises represent the amount that consumers formerly had to pay for Defendant's Products, before the limited-time sale began. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers had to pay the "regular" price to get the Products and did not have the opportunity to get a discount from that "regular" price.

36.     Reasonable consumers also reasonably believe that the "regular" prices Defendant advertises represent the true market value of the products, and are the prevailing prices for those products; and that they are receiving reductions from those "regular" prices in the amounts advertised. In truth, however, Defendant routinely offers these discounts off the purportedly "regular" prices it advertises. As a result, everything about Defendant's price and purported discount advertising for the Products is false. The "regular" prices Defendant advertises are not actually Defendant's "regular" or

former prices, or the prevailing prices for the Products Defendant sells, and do not represent the true market value for the Products, because Defendant's Products are regularly available for less than that, and customers did not have to formerly pay that amount to get those items.  The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.  Nor are the purported discounts "LIMITED TIME" or "EXPIRING SOON"—quite the opposite, they are routinely available.

> **B.    Defendant's advertisements are unfair, deceptive, and unlawful.**

37.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

38.    Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.

39.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

40.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

41.    And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

42.    Here, as described in detail above, Defendant makes untrue and misleading statements about its prices.  Defendant advertises former "regular" prices that are not its true former or  "regular" prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement.  In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values.  Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts.  And Defendant engaged in unlawful, unfair, and deceptive business practices.

**C.    Defendant's advertisements harm consumers.**

43.    Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the "regular" prices at which Defendant usually sells its Products; that these are the prevailing former prices that Defendant sold its Products at before the time-limited discount was introduced.

44.    Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the "regular" prices at which Defendant usually sells its Bundles; that these are the prevailing former prices that Defendant sold its Bundles at before the time-limited discount was introduced.

45.    Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised regular price and that they will receive the advertised discount from the regular purchase price.

46.    In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price

1   and/or market value at a substantial discount.

2       47.     Consumers that are presented with discounts are substantially more likely to

3   make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a

4   promotion or a coupon often closes the deal, if they are wavering or are undecided on

5   making a purchase."[2]  And, "two-thirds of consumers have made a purchase they weren't

6   originally planning to make solely based on finding a coupon or discount," while "80%

7   [of consumers] said they feel encouraged to make a first-time purchase with a brand that

8   is new to them if they found an offer or discount."[3]

9       48.     Similarly, when consumers believe that an offer is expiring soon, the sense

10  of urgency makes them more likely to buy a product.[4]

11      49.     Thus, Defendant's advertisements harm consumers by inducing them to

12  make purchases based on false information.  In addition, by this same mechanism,

13  Defendant's advertisements artificially increase consumer demand for Defendant's

14  products.  This puts upward pressure on the prices that Defendant can charge for its

15  products.  As a result, Defendant can charge a price premium for its products, that it

16  would not be able to charge absent the misrepresentations described above.  So, due to

17  Defendant's misrepresentations, Plaintiff and the class paid more for the products that

18  they bought than they otherwise would have.

19      **D.    Plaintiff was misled by Defendant's misrepresentations.**

20      50.     On November 28, 2023, Ms. Ponce bought an Ultimate Whitening Bundle

21  (V34 Colour Corrector Serum and PAP+ Whitening Strips – 7 Pack) from the Hismile

22  website, us.hismileteeth.com, while living Valencia, California.

23

24      [2] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-
25  buying-behavior/.
        [3] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases
26  Online, Especially Among Millennial Buyers (prnewswire.com).
        [4] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer
27  increased conversion rates from 3.4%-10%); Dynamic email content leads to 400%
28  increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400%
    higher conversation rate for ad with countdown timer).

51.     On November 28, 2023, Defendant represented on its website that a time-limited, "50% off" was running for the bundle she purchased, and that the sale applied to Ms. Ponce's order:



52.     In the email order confirmation that Defendant sent to Ms. Ponce, Defendant represented the Hismile Ultimate Whitening Bundle had a regular price of $58, and that Ms. Ponce was receiving a discount of $29.  Defendant also represented that Ms. Ponce was receiving a discount of $29:

53.     Defendant represented that the Bundles had a certain regular price and that Ms. Ponce was receiving a substantial discount for the items that she purchased.

54.     Ms. Ponce read and relied on Defendant's representations on the website and email confirmation, specifically that the Bundles were being offered at a discount for a limited time and had the "regular" prices listed above.  Based on Defendant's representations described and shown above, Ms. Ponce reasonably understood that the Bundle she was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published "regular" price, that this "regular" price was the market value of the Bundle that she was buying, that she was receiving the advertised discount as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion).  She would not have made the purchase if she had known that the Bundles were not discounted as advertised, and that she was not receiving the advertised discount.

55.     Plaintiff faces an imminent threat of future harm.  Plaintiff would purchase Bundles from Defendant again in the future if she could feel sure that Defendant's "regular" prices accurately reflected Defendant's former prices and the market value of the Bundles, and that its discounts were truthful.  But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's "regular" prices, discounts, and sales are not false or deceptive.  For example, while she could watch a sale until the countdown ends to see if the sale is permanent, doing so could result in her missing out

on the sale (*e.g.*, if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Bundles she would like to purchase.

**E.   Defendant breached its contract.**

56.   When Ms. Ponce purchased and paid for the Hismile Bundle she bought as described above, she accepted offers that Defendant made, and thus, a contract was formed at the time that she made a purchase. The offer was to provide Bundles having a particular listed regular price and market value, and to provide that Bundle at the discounted price advertised on the website.

57.   Defendant's website and email confirmations list the market value of the items that Defendant promised to provide (which are shown above). Defendant agreed to provide a discount equal to the difference between the regular prices listed by Defendant, and the prices paid by Ms. Ponce (also shown above). For example, Defendant offered to provide (among other things) the Hismile Ultimate Whitening Bundle with a market value of $58, for a discounted price of $29; and to provide a discount of $29.

58.   The regular price and market value of the items Ms. Ponce would receive, and the amount of the discount she would be provided off the regular price of those items, were specific and material terms of the contract.

59.   Ms. Ponce performed her obligations under the contract by paying for the items she purchased.

60.   Defendant breached its contract by failing to provide Ms. Ponce with Bundles that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.

**F.   No adequate remedy at law.**

61.   Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

62.     A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months.  Cal. Bus. & Prof. Code § 17501.  Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

63.     In addition, to obtain a full refund as damages, Plaintiff must show that the Products she bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain that obtaining a refund in equity.

64.     In addition, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**V.     Class action allegations.**

65.     Plaintiff brings the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons who, within the applicable statute of limitations period, purchased one or more Hismile Products advertised at a discount on Defendant's website.

- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Hismile Products advertised at a discount on Defendant's website.

66.     The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current

employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity & Ascertainability

67.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

68.    Class members can be identified through Defendant's sales records and public notice.

### Predominance of Common Questions

69.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

70.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Hismile Products advertised at a discount from Defendant.  There are no conflicts of interest between Plaintiff and the class.

### Superiority

71.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of

individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.     Claims.**

<u>**First Cause of Action:**</u>

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

**(By Plaintiff and the California Subclass)**

72.     Plaintiff incorporates each and every factual allegation set forth above.

73.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

74.     Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

75.     Defendant has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass members.

76.     As alleged more fully above, Defendant advertises former prices along with discounts.  Defendant does this, for example, by crossing out a higher price (*e.g.*, ~~$59~~) and displaying it next to a lower, discounted price.  Reasonable consumers would understand prices denoted as "regular" prices from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the time-limited discount went into effect.

77.     The prices advertised by Defendant are not Defendant's "regular" prices. Instead, Defendant routinely has a heavily-advertised promotion running, entitling consumers to a discount.  Moreover, for the same reasons, those prices were not the former prices of the Products.  Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading.  In addition, Defendant's statements that its discounts are "limited time" and only "valid" for a certain time period are false and misleading too.

78.     In addition, Defendant has violated, and continues to violate, Section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised "regular" prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

79.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing Hismile Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

80.     In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Hismile Products.

81.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

82.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Hismile Products if they had known the truth, and/or (b) they overpaid for the Products because the Hismile Products were sold at a price premium due to the misrepresentation.

<u>**Second Cause of Action:**</u>

**Violation of California's Consumer Legal Remedies Act**

**(by Plaintiff and the California Subclass)**

83.     Plaintiff incorporates each and every factual allegation set forth above.

84.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

85.     Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

86.     Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

87.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

88.     As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to subclass members.  Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

89.     Defendant violated, and continues to violate, section 1770 of the California Civil Code.

90.     Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

91.     Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

92.     And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are

unusually large, when in fact they are regularly available (4) misrepresenting the reason for the sale (*e.g.*, "Presidents Day Sale," when in fact the sale is ongoing and not limited to Presidents Day).

93.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

94.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Hismile Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

95.     In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Hismile Products.

96.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

97.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Hismile Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they received products with market values lower than the promised market values.

98.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Ponce, on behalf of herself and all other members of the subclass, seeks injunctive relief.

99.     CLRA § 1782 NOTICE.  On January 11, 2024, a CLRA demand letter was sent to Defendant's headquarters in Australia via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Defendant does not have a California headquarters or a California registered agent.  This letter provided notice of Defendant's violation of the CLRA and demanded that

Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Defendant did not respond within the 30-day notice period. Accordingly, Plaintiff seeks all monetary and equitable relief allowed under the CLRA, including actual damages, punitive damages, and reasonable attorneys' fees..

100.   A CLRA venue declaration is attached.

### Third Cause of Action:

### Violation of California's Unfair Competition Law
### (by Plaintiff and the California Subclass)

101.   Plaintiff incorporates each and every factual allegation set forth above.

102.   Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

103.   Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong*

104.   Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.  In addition, Defendant engaged in unlawful conduct by violating the FTCA.  The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements.  15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a).  As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA.  16 C.F.R. § 233.1, § 233.2.

*The Deceptive Prong*

105.   As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

106.   Defendant's representations were misleading to Plaintiff and other reasonable consumers.

107.   Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

### The Unfair Prong

108.   As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

109.   Defendant violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, the FAL, and the FTCA).

110.   The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the price of a consumer product.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading consumer products only injure healthy competition and harm consumers.

111.   Plaintiff and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

112.   Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

113.   For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Hismile Products.  Defendant's representations were a substantial factor in Plaintiff's purchase decision.

114.   In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Hismile Products.

115.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass members.

116.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Hismile Products if they had known that they were not discounted, and/or (b) they overpaid for the Products because the Products were sold at the regular price and not at a discount.

**Fourth Cause of Action:**

**Breach of Contract**

**(by Plaintiff and the Nationwide Class)**

117.    Plaintiff incorporates each and every factual allegation set forth above.

118.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

119.    Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's website.

120.    The contracts provided that Plaintiff and class members would pay Defendant for the Products purchased.

121.    The contracts further required that Defendant provides Plaintiff and class members with Products that have a market value equal to the regular prices displayed on the website.  They also required that Defendant provide Plaintiff and class members with a discount equal to the difference between the price paid, and the regular prices advertised.  These were specific and material terms of the contract.

122.    The specific discounts were a specific and material term of each contract.

123.    Plaintiff and class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

124.    Defendant breached its contracts with Plaintiff and class members by failing to provide Products that had a "regular" price, former price, and/or prevailing market

value equal to the regular price displayed on its website, and by failing to provide the promised discount.  Defendant did not provide the discount that it had promised.

125.   Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on January 11, 2024.

126.   As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(by Plaintiff and the California Subclass)**

127.   Plaintiff incorporates each and every factual allegation set forth above.

128.   Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

129.   Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Hismile Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website.  This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

130.   This warranty was part of the basis of the bargain and Plaintiff and members of the subclass relied on this warranty.

131.   In fact, the Hismile Products' stated market value was not the prevailing market value.  Thus, the warranty was breached.

132.   Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on January 11, 2024.

133.   Plaintiff and the subclass were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Hismile Products if they had known that the warranty

was false, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

<u>**Sixth Cause of Action:**</u>

**Quasi-Contract/Unjust Enrichment**

**(by Plaintiff and the Nationwide Class)**

134.    Plaintiff incorporates each and every factual allegation in paragraphs 1-45, 51-60 above.

135.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

136.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Hismile Products and to pay a price premium for these Products.

137.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

138.    Plaintiff and the class seek restitution, and in the alternative, rescission.

<u>**Seventh Cause of Action:**</u>

**Negligent Misrepresentation**

**(by Plaintiff and the California Subclass)**

139.    Plaintiff incorporates each and every factual allegation set forth above.

140.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

141.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

142.    These representations were false.

143.   When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

144.   Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

145.   In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Hismile Products.

146.   Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

147.   Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Hismile Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

**Eighth Cause of Action:**

**Intentional Misrepresentation**

**(by Plaintiff and the California Subclass)**

148.   Plaintiff incorporates each and every factual allegation set forth above.

149.   Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

150.   As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

151.   These representations were false.

152.   When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

153.    Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

154.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Hismile Products.

155.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

156.    Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Hismile Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

## VII.    Relief.

157.    Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## VIII.   Demand for Jury Trial.

158.    Plaintiff demands the right to a jury trial on all claims so triable.

Dated: February 23, 2024                    Respectfully submitted,

                                            By: /s/ *Christin Cho*
                                            Christin Cho (Cal. Bar No. 238173)
                                            christin@dovel.com
                                            Simon Franzini (Cal. Bar No. 287631)
                                            simon@dovel.com
                                            Grace Bennett (Cal. Bar No. 345948)
                                            grace@dovel.com
                                            DOVEL & LUNER, LLP
                                            201 Santa Monica Blvd., Suite 600
                                            Santa Monica, California 90401
                                            Telephone: (310) 656-7066
                                            Facsimile: (310) 656-7069

                                            *Attorneys for Plaintiff*